## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

DANIEL J. WIK,

                              Plaintiff,

-vs-                                                   DECISION AND ORDER

DONALD R. KUNEGO, in his                               11-CV-6205-CJS
personal and individual capacity,

                              Defendant.

## INTRODUCTION

**Siragusa, J.** Pending before the Court is Defendant's motion for an award of at-
torney fees pursuant to Federal Rule of Civil Procedure 11(c), filed on July 26, 2013,
ECF No. 44. Defendant argues that Plaintiff's motion for reconsideration, November 7,
2012, ECF No. 35, was frivolous and filed with intent to harass the defendant and need-
lessly increase the cost of litigation. Plaintiff opposes the motion in two affirmations, one
filed on July 29, 2013, ECF No. 45, and one filed on August 9, 2013, ECF No. 46. For
the reasons stated below, the Court grants Defendant's application and awards $818.00
in attorney fees to be paid by Plaintiff as a sanction.

## BACKGROUND

The procedural and factual background of this case is well known to the parties
and will not be set out in detail here. It is sufficient to relate that Plaintiff was summoned
before Defendant, a Town Court Justice in Bergen, New York, for several traffic viola-
tions and a misdemeanor offense. Plaintiff entered an *Alford* plea to the the misde-
meanor offense and a traffic violation. The misdemeanor conviction was later over-

turned on appeal.

The basis for this Federal lawsuit was Plaintiff's contention that Defendant was "not titled to possess the office of Bergen Town Court Justice." Compl. ¶¶ 39–40.[1] Plaintiff raised four claims in his lawsuit, all of which this Court rejected on the basis of absolute judicial immunity in a Decision and Order filed on October 9, 2012, ECF No. 32.[2] Plaintiff sought reconsideration on November 7, 2012, ECF No. 35, and Defendant opposed in an affirmation filed on December 21, 2012, ECF No. 38, in which he also sought sanctions, including an award of attorney's fees incurred for opposing the motion for reconsideration. The Court rejected Plaintiff's motion for reconsideration in a Decision and Order entered on March 1, 2013, ECF No. 40. In that Decision, the Court stated, in pertinent part to the matter now before it:

> Plaintiff's motion for reconsideration and the two supporting affidavits he submitted in support appear to the Court to have been presented for the purpose of harassment, or to needlessly increase the cost of this litigation. Further, he made no legal arguments warranted by existing law, and has provided no factual contentions refuting that Town Justice Kunego was acting in his judicial capacity. It is, therefore, hereby…ORDERED, that Daniel J. Wik show cause by March 29, 2013, why sanctions should not be imposed against him pursuant to Federal Rule of Civil Procedure 11, or this Court's inherent authority, for submitting to the Court a frivolous application for reconsideration….

Decision and Order at 6–7, ECF No. 40. In a case similar to the one at bar filed by Plaintiff against the other Bergen Town Justice, *Wik v. Swapcienski*, No. 11-CV-6220-CJS, the Court warned Plaintiff about filing frivolous applications:

---

[1] Plaintiff's complaint resembles the type of complaint dealt with in *Meads v. Meads*, 2012 ABQB 571 (Sept. 18, 2012), a Court of Queen's Bench of Alberta, Canada, decision extensively discussing what the author termed Organized Pseudolegal Commercial Argument litigants.

[2] The Court dismissed all the Federal causes of action and declined to exercise jurisdiction over the remaining potential State causes of action, pursuant to 28 U.S.C. § 1367(c).

Plaintiff is a *pro se* litigant who has brought several actions in this Court over the past several years, and who should therefore be familiar with Rule 11 of the Federal Rules of Civil Procedure. Plaintiff is hereby cautioned, with regard to this action and the other actions that he is currently litigating in this Court, that if he continues to file frivolous applications he may be sanctioned pursuant to Rule 11, after notice and an opportunity to be heard. Such sanctions may include monetary penalties and the dismissal of his actions with prejudice, as the Court, in its discretion, may deem necessary to deter such frivolous and vexatious conduct.

Decision and Order at 1–2, *Wik v. Swapceinski*, No. 11-CV-6220-CJS (W.D.N.Y. Feb. 17, 2012).

## FEDERAL RULE OF CIVIL PROCEDURE 11

Federal Rule of Civil Procedure, which applies to Plaintiff *pro se*, provides that:

By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an…unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

**(1)** it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

**(2)** the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

**(3)** the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

**(4)** the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b). The same Rule further provides that the Court may impose sanctions on the party it determines has violated the rule. Further, Rule 11 requires that any motion by a party for Rule 11 sanctions, "must be made separately from any other motion," and must be "served under Rule 5, but it must not be filed or be presented to

3

the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service…." Rule 11(c)(2). Finally, the Rule limits the Court to award as a sanction "what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Rule 11(c)(4). The Court's ability to impose Rule 11 sanctions differs depending on whether the imposition is by a party's properly-filed motion, or *sua sponte*. Since, in this case, there is no evidence of a *properly filed* motion, the Court will review the requirements for imposing sanctions *sua sponte*.

The Honorable Nicholas G. Garaufis of the Eastern District of New York analyzed the *sua sponte* imposition of sanctions by the Court under Rule 11 in his decision *In re Gushlak*, No. 11–MC–218 (NGG), 2012 WL 2564523 (E.D.N.Y. Jul.2, 2012). As Judge Garaufis explained:

> In relevant part, Rule 11(b) requires a lawyer to certify, "to the best of that person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that his or her "legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying or reversing existing law or for establishing new law." If Rule 11(b) is violated, the court may impose sanctions, either upon a motion by the opposing party or on its own initiative. *See* Fed. R. Civ. P. 11(c). The conduct that constitutes a violation of Rule 11(b) differs, however, depending on whether the prospect of sanctions arises by motion or by an order to show cause. In *In re Pennie & Edmonds LLP,* the Second Circuit drew on language in the Advisory Committee notes to the 1993 amendment to Rule 11 to hold that where, as here, the court itself initiates an inquiry into a potential Rule 11 violation, sanctions should not be imposed unless the responding attorney acted with "subjective bad faith." *See* 323 F.3d 86, 87 (2d Cir.2003). This is in contrast to the *mens rea* standard that applies when a party makes a motion for Rule 11 sanctions. In those cases, the standard is objective unreasonableness. *Id.* at 90 (citing *Ted Lapidus, S.A. v. Vann,* 112 F.3d 91, 96 (2d Cir.1997)). The rational for this distinction is that a motion for sanctions allows the responding attorney an opportunity to withdraw or disclaim his or her offending contention, whereas the court-initiated sanctions process does not. *Id.* at 91. This approach is not universally accepted, *see id.* at 93–102 (Underhill, J. dissenting); *Young v.*

*City of Providence,* 404 F.3d 33, 40 (1st Cir.2005), but it remains the law of the Circuit, *see ATSI Commc'ns, Inc. v. Sharr Fund, Ltd.,* 579 F.3d 143, 150 (2d Cir.2009).

* * *

Reference to recent district court cases similarly fails to provide clear guidance. Since the Circuit clarified the standard for court-initiated sanctions, district courts have found subjective bad faith in a variety of cases, ranging from those involving overtly dishonest or contemptuous behavior, *see, e.g., Gollomp v. Spitzer,* 06–CV–802 (FJS/RFT), 2007 WL 433361, at *————, 2007 U.S. Dist. LEXIS 8524, at *28–29 (N.D.N.Y. Feb. 5, 2007), *aff'd,* 568 F.3d 355 (2d Cir.2009) (imposing sanctions on counsel under 28 U.S.C. § 1927 for lying to the magistrate judge about his disciplinary record); *SEC v. Smith,* 798 F.Supp.2d 412, 426 (N.D.N.Y.2011) (imposing sanctions on a party for intentionally misrepresenting her financial interest in a trust); *Washington 1993, Inc. v. Hudson (In re Hudson* ), No. 00–11683, 2010 WL 3504767, at *————, Adversary No. 00–90091, 2010 Bankr. LEXIS 3003, at *16–17 (Bankr. N.D.N.Y. Aug. 30, 2010) (imposing sanctions on *pro se* litigant for filing recusal motion that included the baseless allegation that the bankruptcy judge committed a crime by altering the content of a submission), down to those where the court simply regarded an argument as frivolous, *see, e.g. McGuire v. Village of Tarrytown,* No. 08–CIV–2049 (KTD), 2011 WL 4347175, at *——, 2011 U.S. Dist. LEXIS 10321, at *4 (S.D.N.Y. Sept.14, 2011).

The court concludes that the best interpretation of subjective bad faith must fall somewhere in between these two extremes. The standard can neither be so strict as to require a lie about a historical fact or contempt, nor can it be so lenient as to allow the court to impose sanctions for nothing more than a frivolous argument. If it were the former, then the court would be unable to impose sanctions for conduct prohibited by several important provisions of Rule 11, *cf.* Fed. R. Civ. P. 11(b)(2) (allowing for sanctions for "legal contentions" not warranted by law), which are expressly made grounds for court-imposed sanctions by subsection (c)(3) of that rule. If it were the latter, sanctions could be imposed for mere negligence. Instead, the court concludes that, in the context of this case, a finding of subjective bad faith requires evidence of what might be referred to as "frivolous-plus." That is, it is not sufficient to find that a legal argument is frivolous. There must also be either direct or circumstantial evidence that counsel knew that the argument was without merit. One type of circumstantial evidence of such knowledge is evidence that the argument was made for an improper purpose. Subsection (b)(1) of Rule 11 provides examples of such improper purposes such as "to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Where these motives

are present, it is fair to conclude that counsel was aware that the frivolous argument was baseless, but raised it anyway because success on the merits was not the ultimate objective.

*In re Gushlak,* 2012 WL 2564523, 1–2.

## ANALYSIS

Defense counsel's December 21, 2012, affirmation described Plaintiff's application for reconsideration of this Court's decision to be frivolous and vexatious. For example, defense counsel pointed out the following:

> 5. Mr. Wik has accused this Court of engaging in deceit and perpetrating a fraud against him. (See paragraph 48 of Mr. Wik's Affirmation.) Even more appalling is plaintiff's assertion that the actions of this Court have been "repugnant to the Constitution" and that this Court is "treasonous" for finding the doctrine of Judicial Immunity to be applicable in this case. (See paragraph 27 of Mr. Wik's Affirmation.)

> 6. …Mr. Wik has also accused this Court of acting in a "direct conflict of interest" by finding the Judicial Immunity doctrine to be applicable. (See paragraph 63 of Mr. Wik's Affirmation.)…

> 8. Mr. Wik continues his rant that the "district court of the United States" is somehow separate and distinct from the "United States District Court."…

> 10. …At paragraph 30 of his Affirmation, plaintiff surmises that New York State is a "corporate body politic" and that only those who choose to participate in it can be bound by its laws.…

Flynn Aff. ¶¶ 5–10, Dec. 21, 2012, ECF No. 38. Defendant also provides examples of Plaintiff's evasive answers to simple jurisdictional questions asked of him as further support of the defense argument that Plaintiff is acting in bad faith:

> 12. …Mr. Wik has been nothing short of evasive in this matter and it also appears that Mr. Wik chooses to recognize only those laws, rights or privileges that work to the benefit of Mr. Wik.

> 13. To accentuate this assertion, I will direct the Court's attention to sworn testimony given by the plaintiff. Attached hereto as ***Exhibit*** B are excerpts from plaintiff's 50-h Hearing:

Q. Do you still live at 659 Averill Avenue?

A. Since there's pending litigation, I'm going to choose not to be compelled to be a witness against myself by answering that. I will receive all correspondence there.

Q. Where do you reside?

A. Please define the word "reside."

Q. Where do you live?

A. Please define the word "live."

Q. Where do you go to bed at night?

A. Various locations.

Q. Such as?

A. Erie County, Monroe County, Genesee County.

(See **Exhibit H** at p. 4-5.)

Flynn Aff. ¶¶ 12–13.

In the application for an award of attorney's fees, defense counsel explains that he is engaged in insurance defense work and charges an hourly rate lower than most private firms engaged in insurance defense work. Counsel calculated the hourly rate to be $132.00. Counsel calculated that the total time expended defending against Plaintiff's motion for reconsideration amounted to 6.2 hours, resulting in a fee of $818.00. Counsel did not submit contemporaneous time records, but estimated his time spent as follows:

| | |
|---|---|
| Receipt/Review of plaintiff's Motion for Reconsideration: | 2.5 hours |
| Draft Opposition to Motion for Reconsideration: | 2.3 hours |
| Receipt and Review of plaintiff's Reply Affidavit: | 1.2 hours |
| Receipt and Review of Decision and Order: | .2 hours |

Flynn Aff. ¶ 12, Jul. 26, 2013, ECF No. 44. Counsel asks that the payment be made by

7

money order or certified draft to "Selective Insurance Company of America" and reference Claim Number 21029505. *Id.* ¶ 13.

Though ordered to show cause by March 29, 2013, why sanctions should not be imposed against him, Order to Show Cause, Mar. 1, 2013, ECF No. 41, *Plaintiff never responded*, and the Court directed Defendant to file a motion for reasonable attorney's fees, Decision and Order, Jul. 15, 2013, ECF No. 42. Counsel did so on July 26, 2013, ECF No. 43, and amended it the same day, ECF No. 44. Three days later, Plaintiff filed an affirmation, Jul. 29, 2013, ECF No. 45, and filed another affirmation on August 9, 2013, ECF No. 46.

Plaintiff's eleven page affirmation of July 29, 2013, ECF No. 45, is entitled "Affirmation in Support of Objection" and begins with a lengthy discussion of why he is not *pro se*, but is, instead, "my own proper self." Wik Aff. ¶ 2, ECF No. 45. He then asserts he is "not a resident, citizen, or member of the body politic, who has never voluntarily waived any Rights," and insists he "only appears as a sovereign American National man, New Yorker under the state of New York, not a corporation, re-presented, partner, trustee, surety, legal entity, any fictitious entity, or as an agent but as a holder of due power." *Id.* ¶ 2. He insists that the "facts relative to this action occurred in the state of New York not the State of New York," *id.* ¶ 6, states that, "[a]s a matter of Right" he is "entitled to a finding of fact and conclusion of law," *id.* ¶ 10, that the Court applied the doctrine of judicial immunity "unconstitutionally and/or nonconstitutionally…to [him] as a man who has not voluntarily waived Rights," *id.* ¶ 13, that the Court's decision in *Wik v. Swapcenski* is incorrect, *id.* ¶ 15, that the Court has denied him "the opportunity to obtain the evidence necessary to show that Defendant was merely an employee and not

an officer entitled to [absolute judicial] immunity," *id.* ¶ 22, and that the Court "now is attempted [sic] to ignore the issues [he] had raised again and sanction [him] for issues it refuses to address and for [him] belligerently prosecuting the cause of action for a violation of [his] Constitutionally secured Rights," *id.* ¶ 23.

Plaintiff's second affirmation is entitled "Affirmation in Support of Response to Defendant's Affirmation of Counsel for Sanctions," August 9, 2013, ECF No. 46, ("Second Wik Affirmation"). In it, Plaintiff contends that he is not *pro se* and that he is, instead, "representing (re-presenting)" himself and that he "brought this action in [his] capacity as a Man and not as a natural person giving consciousness and physical capacity to any legal entity or person." *Id.* ¶ 6.

### *Plaintiff's* Pro Se *Status*

Since Plaintiff spends time in each affidavit regarding the Court's use of the term *pro se* to describe his status, it will humor Plaintiff with a short discussion of the term. *Pro se* is a Latin term meaning, "for oneself; on one's own behalf; without a lawyer." Black's Law Dictionary (9th ed. 2009). *Pro se* is synonymous with *in propria persona*. The Court understands Plaintiff's status as a person representing himself. *See ING Bank, FSB v. Mikels*, No. CIV S-11-2400-KJM-CMK, 2012 WL 1028242 (E.D. Cal. Mar. 26, 2012) (footnote omitted) ("defendant Marshall Mikels appeared as "A Private Living Sovereign Man by Special Appearance Rogatory as the Authorized Representative for Defendant(s)," which makes him "an attorney in fact." (Mikels Decl. at 5, ECF 16.) *"In propria persona"* in Latin means "in one's own person" and is synonymous with *"pro se"* which means "[f]or oneself; on one's own behalf; without a lawyer." BLACK'S LAW DICTIONARY (9th ed.2009). Defendant Marshall Mikels is not an attorney;[] defendants are

proceeding without a lawyer. Therefore, defendants are proceeding *in propria perso-na.*").

As more fully explained by the district court in *United States v. Goldberg*, 937 F. Supp. 1121 (M.D. Pa. 1996):

> "*In propria persona*" is the term used by Goldberg, and is not appropriate in a technical sense, although the court has seen the term commonly used by inmates proceeding *pro se.* According to Black's Law Dictionary, it was formerly a rule of pleading that an attorney, as an officer of the court, could not appear before a court which did not have jurisdiction. By appearing with an attorney, the party was admitting the jurisdiction of the court. Any challenge to jurisdiction would have to be made without an appearance by counsel. A person making such a challenge, then, would appear "in their own person," or *in propria persona.* Black's Law Dictionary 792 (6th ed. 1990).
>
> On the other hand, a person appearing at any time without counsel is proceeding *pro se. Id.* at 1221. Thus, a non-attorney appearing to challenge jurisdiction was both *in propria persona* and *pro se,* but the designation of their status as *in propria persona* would not survive the determination of jurisdiction, and they would be proceeding solely with *pro se* status thereafter if no counsel appeared.
>
> Regardless, the rule of pleading having long since changed, the term *in propria persona* is outdated, at least as having a separate legal meaning. Courts have continued to use the phrases *in propria persona* and *pro se* interchangeably and synonymously. *Savage v. Estelle,* 924 F.2d 1459, 1460 n. 1 (9th Cir.1990) ("no legal distinction" between the phrases in context of self-representation), *cert. denied,* 501 U.S. 1255, 111 S. Ct. 2900, 115 L.Ed.2d 1064 (1991); *Liebig v. Kelley–Allee,* 923 F. Supp. 778, 778 n. 1 (E.D.N.C.1996).

*Goldberg*, 93 F. Supp. at 1125 n.1. The Court is familiar with Mr. Wik's protestations concerning this Court's jurisdiction over him as a sovereign citizen, but has already concluded that by filing his complaint, he has conceded this Court's *in personam* jurisdiction.[3]

---

[3] Plaintiff has also questioned the Court's own appointment, which is a matter of public record easily accessible. *See* Presidential Nominations, 105th Congress, PN 455-105 (Jul. 15, 1997) *available at*

***Judicial Immunity Evidence***

Plaintiff contends that the Court deprived him of the opportunity to obtain evidence in support of his argument that Defendant was not a town justice entitled to absolute judicial immunity. This issue was litigated in the companion case against the other town justice. In an Order filed on February 8, 2012, ECF No. 31, in *Wik v. Swapceinski*, No. 11-CV-6220-CJS-MWP (W.D.N.Y. Feb. 8, 2012), United States Magistrate Judge Marion W. Payson addressed Plaintiff's motion for discovery ruling that with regard to Plaintiff's subpoena requests, they were overbroad. Judge Payson directed Plaintiff to submit a supplemental affidavit showing the relevance of the documents requested. The docket does not indicate that Plaintiff did so.

In this case, the Court issued a Decision and Order granting Defendant summary judgment. Decision and Order, *Wik v. Kunego*, No. 11-CV-6205-CJS-JWF, ECF No. 32. In that Decision, the Court wrote:

> Plaintiff also states that Defendant is not a duly elected Town Court Justice for the Town of Bergen, New York. However, that issue was put to rest in the affidavit of Michelle M. Smith, Town Clerk and Tax Collector for the Town of Bergen, who stated, "the Honorable Donald R. Kunego is a duly elected Town Court Justice for the town of Bergen, New York." Smith Aff. ¶ 2, Apr. 13, 2012, ECF No. 25-12. Included in Defendant's papers is his oath of office, notarized by Ms. Smith on December 15, 2009. Plaintiff has submitted no evidence in admissible form to contradict the Genesee County records showing that Judge Kunego is a duly appointed town justice.

Plaintiff also contends in his Second Wik Affirmation that the attorneys in the Court's Pro Se Office review all documents filed by a *pro se* litigant. Therefore, if Plaintiff's motion lacked merit, was frivolous or was intended to harass, "it was the ministerial

---

http://thomas.loc.gov/home/nomis.html (last accessed Dec. 31, 2013); 143 Cong. Rec. S 11407 (Oct. 30, 1997).

duty of the Pro Se Attorney to withhold [its] filing." Second Wik Aff. ¶ 13. Plaintiff misunderstands the purpose of the Court's Pro Se Office attorneys. First, the Court's local rule requires that all *pro se* litigants comply with the rules. W.D.N.Y. L.R. Civ. P. 1.3 & 5.2(i). Second, the Amended Plan for the Disposition of *Pro Se* Cases, Oct. 1, 1996, provides that upon the filing of a complaint, the Court's Pro Se Office at office conducts an initial screening. The authority for that screening is contained in 28 U.S.C. § 1915 and 1915A, and pertains only to cases proceeding *in forma pauperis* or cases filed by prisoner litigants. Plaintiff is neither; therefore, the Court's Pro Se Office has had no interaction with this case. The Court has already called Plaintiff's attention to Federal Rule of Civil Procedure 11, which pertains to all litigants, regardless of whether they are represented by counsel. *See Wik v. Swapcienski*, No. 11-CV-6220-CJS (W.D.N.Y. Feb. 17, 2012). Plaintiff cannot dodge responsibility for his filings in this Court.

Turning to the merits of his reconsideration motion, Plaintiff again asserts that Defendant in this case, a judicial officer for New York State, is not entitled to judicial immunity because, "by operation of law he cannot hold the [judicial] office due to defects in the requirements." Second Wik Aff. ¶ 27. Plaintiff further contends that the Court "does not acknowledge my Rights as a Man but only acknowledges privileges and immunities of persons." *Id.* ¶ 30. Plaintiff's arguments in this, and other cases litigated before this Court, fit the pattern described by the Honorable J.D. Rooke, Associate Chief Justice of the Court of Queen's Bench of Alberta in his Reasons for Decision in *Meads v. Meads*, No. 4803 155609, 2012 ABQB 571, 543 A.R. 215 (Can. Alberta Court of Queen's Bench Jun. 8, 2012).[4] Judge Rooke describes litigants who go by the identity

---

[4] A copy of the decision is available at the Alberta court's web site, http://www.albertacourts.ab.ca/index.php?p=167, using the citation 2012 ABQB 571.

of Sovereign Men or Sovereign Citizens, among others. *Id.* ¶ 1. Plaintiff's complaint displays some of the oddities identified by Judge Rooke as a sign of such a litigant. For example, Mr. Wik has always maintained that his mail be addressed using "c/o non-domestic." *See id.* ¶ 234. He refers to himself as a "flesh and blood man." *See id.* ¶ 238. He refers to the United States and the State of New York as corporate entities of which he is not a member. These and other indicia that Mr. Wik rejects the authority of the Court and the laws of the United States over him are entirely frivolous. As the Second Circuit pointed out in *United States v. Ulloa*, 511 Fed. Appx. 105, 107 n.1 (2d Cir. Feb. 14, 2013):

> The sovereign citizens are a loosely affiliated group who believe that the state and federal governments lack constitutional legitimacy and therefore have no authority to regulate their behavior. The FBI has labeled the sovereign citizens a domestic terrorist group. See "Sovereign Citizens A Growing Domestic Threat to Law Enforcement," FBI Law Enforcement Bulletin (Sept. 2011), http://www.fbi.gov/stats-services/publications/law-enforcement-bulletin/sept ember-2011/sovereign-citizens.

Regardless of whether Plaintiff considers himself a sovereign citizen, his arguments opposing the imposition of sanctions echo those made by sovereign citizens and rejected by the courts. The Court finds that Daniel J. Wik acted in bad faith by filing a frivolous motion for reconsideration of the Court's decision in this case. After having been warned by the Court on February 17, 2012, about the requirements of Rule 11, Plaintiff chose to ignore Rule 11's provisions and file, on November 7, 2012, the frivolous motion that is at the heart of this sanction. The overwhelming circumstantial evidence convinces the Court that his filing was presented for an improper purpose: to harass Defendant and needlessly increase the cost of the litigation. Accordingly, the Court determines that sanctions are warranted.

Defendant's counsel has submitted evidence of time spent responding to Plaintiff's frivolous motion and estimated that the cost of doing so amounted to $818.00. The hourly rate listed by counsel is below that customarily charged by litigation counsel who practice in this Court, and the amount of time expended in responding to Plaintiff's motion is reasonable. Rule 11 permits the Court, on motion, and if warranted for effective deterrence, to order that the sanctioned party pay part of all of the reasonable attorney's fees and expenses directly resulting from the violation. Fed. R. Civ. P. 11(c)(4). Neither of Plaintiff's affidavits mentioned any inability to pay reasonable sanctions. Therefore, the Court imposes a sanction of $818.00 on Plaintiff, which shall be paid by money order or certified draft to "Selective Insurance Company of America" and reference Claim Number 21029505.

## CONCLUSION

As a sanction against Daniel J. Wik under Federal Rule of Civil Procedure 11, the Clerk is directed to enter judgment against Plaintiff in the amount of $818.00 in favor of Selective Insurance Company of America.

DATED:      April 29, 2014
            Rochester, New York

                              /s/ Charles J. Siragusa
                              CHARLES J. SIRAGUSA
                              United States District Judge